**CITY OF DALLAS et al., Petitioners,**

v.

**Daniel C. BROWN et al. and James P. Donovan, Atty., Respondents.**

No. 16193.

Court of Civil Appeals of Texas.

Dallas.

May 22, 1963.

See also 362 S.W.2d 372.

H. P. Kucera, City Atty., and N. Alex Bickley, Asst. City Atty., Dallas, for petitioners.

James P. Donovan, Dallas, for respondents.

PER CURIAM.

Original contempt proceedings. The City of Dallas, acting through its City Attorney, by motion duly verified, moves this Court to declare respondents to be in contempt of this Court for violation of a Writ of Prohibition and Ancillary Orders issued by this Court on April 16, 1963. For a proper understanding of the issues here presented it is both desirable and essential to relate the following relevant antecedent facts.

1. On April 4th, 1961 George S. Atkinson, and others, owners of property near Love Field, a municipal airport located in the City of Dallas, filed a class suit in the District Court of Dallas County seeking to restrain the City of Dallas from the construction of a runway at said airport. Said suit being No. 59027–H, styled George S. Atkinson, et al. v. City of Dallas, also attacked the validity of certain revenue bonds which the City of Dallas was about to issue to finance construction of the airport runway.

2. On July 17, 1961 the District Court granted a summary judgment in favor of the City denying permanent injunction sought by plaintiffs.

3. On December 15, 1961 this Court, on the appeal of the above case, affirmed the

judgment of the trial court. Motion for rehearing was overruled on January 19, 1962. A detailed statement of the facts and issues involved will be found in this Court's opinion, styled Atkinson, et al. v. City of Dallas, and reported in 353 S.W.2d 275.

4. Appellants made application to the Supreme Court of Texas for a writ of error and, on March 14, 1962, the application was denied by the Supreme Court with the notation "No Reversible Error".

5. On June 25, 1962 the Supreme Court of the United States denied a writ of certiorari in the case, and on October 8, 1962 overruled a motion for rehearing. See Atkinson v. City of Dallas, 370 U.S. 939, 82 S.Ct. 1587, 8 L.Ed.2d 808, rehearing denied 371 U.S. 854, 83 S.Ct. 18, 9 L.Ed.2d 92. By the action of the Supreme Court of the United States the judgment of this Court of December 15, 1961 became final.

6. On September 24, 1962 Respondents herein filed Civil Action No. 9276, styled Brown, et al. v. City of Dallas, et al. in the United States District Court for the Northern District of Texas, Dallas Division. By this suit they sought a permanent injunction against the City of Dallas to restrain said City from building the runway and from issuing certain revenue bonds. No temporary injunction was sought and none was granted. Forty of the plaintiffs in the case of Brown, et al. v. City of Dallas, et al. in the United States District Court were the same persons who were plaintiffs in the original suit filed April 3, 1961 in the District Court of Dallas County, Texas and other plaintiffs, all alleged to be property owners, were added in the Federal Court case.

7. On October 2, 1962, the City of Dallas and others filed an application for Writ of Prohibition and other Ancillary Mandatory Orders in this Court asking us to enforce our judgment in Atkinson v. City of Dallas by prohibiting the plaintiffs in the case of Brown v. City of Dallas, et al. in the United States District Court from attempting to relitigate the same issues and from interfering with the issuance and sale of the Love Field Revenue Bonds which this Court had declared to be valid in the Atkinson decision. This Court was also requested to direct that the plaintiffs in the Brown suit be required to dismiss said cause and refrain from filing any other litigation in reference to said runway and Love Field Revenue Bonds.

8. On October 6, 1962, the plaintiffs in the Brown suit filed an application in the United States District Court seeking to enjoin this Court from considering or acting upon the City's application for writ of prohibition.

9. On October 10, 1962, at the hearing, the United States Court dismissed the application for injunction to restrain this Court from further considering the City's application for a writ of prohibition.

10. On October 24, 1962, by a divided court, with Chief Justice Dixon and Associate Justice Williams filing a majority opinion, we denied the City of Dallas the relief sought in its application for writ of prohibition. Associate Justice Young filed a written dissenting opinion. The motion for rehearing filed by the City of Dallas was overruled on November 23, 1962. City of Dallas, et al. v. Brown, et al., Tex.Civ. App., 362 S.W.2d 372.

11. On December 8th, 1962, the City of Dallas, as petitioner, filed its original application for a mandamus in the Supreme Court of the State of Texas in which it was asked that the Supreme Court order and direct this Court of Civil Appeals to grant the relief prayed for and which relief this Court had denied in cause No. 16,193, styled City of Dallas, et al. v. Brown, et al, 362 S.W.2d 372.

12. The Supreme Court of the State of Texas in cause No. A–9340, styled City of Dallas, et al., Relators v. Dixon, Chief Justice, et al., Respondents, did by written opinion dated March 15 1963, issue its order, styled "An Original Mandamus" directing this Court to issue a writ of prohibi-

tion and other ancillary orders granting to the City of Dallas the relief sought against further prosecution of the case involving the same issues as had been previously foreclosed in the Atkinson case. City of Dallas, et al. v. Dixon, Chief Justice, et al., Tex., 365 S.W.2d 919. The Supreme Court overruled motion for rehearing and notice was given to this Court to comply with the order of the Supreme Court.

13. Thereafter no action was taken by respondents to cause such decision of the Supreme Court of Texas to be reviewed by the Supreme Court of the United States.

14. The Supreme Court of Texas in its opinion, held that the parties in the case of Brown v. City of Dallas in the Federal Court were bound by the decision in Atkinson v. City of Dallas. In this regard the court said:

"It is immaterial that Brown is not a class action. The controlling fact is that Atkinson was a class action as authorized by Rule 42, Texas Rules of Civil Procedure; and being a class action of the hybrid type, the judgment in Atkinson binds all members of the class insofar as validity of the bonds and the right of the City to construct the runways are concerned if the class was adequately represented by those who sued on behalf of the class. McDonald, Texas Civil Practice, Vol. 1, § 3.37, pp. 283–284; Hovey v. Shepherd, 105 Tex. 237, 147 S.W. 224. The description of the plaintiffs in Brown, quoted above, shows clearly that they are members of the class represented by the plaintiffs in Atkinson, and it is not suggested that they were not adequately represented in that suit. Their right to relitigate the same issues is foreclosed by our decision in Hovey v. Shepherd, supra. This must be so. If it were not so, different groups of Dallas citizens could halt all efforts of the City to improve its airport facilities indefinitely by filing new suits. Such an absurdity cannot be tolerated."

15. The Supreme Court, by its opinion, also held that the issues sought to be litigated in the Federal Court are essentially the same as the issues litigated in Atkinson to final judgment. Thus the court said:

"An analysis of the petition in Brown discloses that the issues sought to be litigated are essentially the same as the issues litigated in Atkinson, and the prayer is for the same ultimate relief. Such additional collateral issues as are injected in Brown could, by diligence, have been litigated in Atkinson. They are, therefore, also foreclosed by the judgment in Atkinson."

16. Pursuant to direct order of the Supreme Court of Texas, this court did, on April 16, 1963, grant its Writ of Prohibition and Ancillary Orders, directed to the Respondents providing that said parties and all of them;

"together with all persons similarly situated, are hereby prohibited from prosecuting, urging or in any manner seeking to litigate, as attorney and/or plaintiffs, case No. 9276 styled Brown et al. v. City of Dallas, et al. now pending in the United States District Court for the Northern District of Texas, Dallas Division, and they and each of them, individually, and as a class, are further prohibited and enjoined from filing or instituting any litigation, lawsuits and other actions, seeking to contest the right of the City of Dallas to proceed with the construction of the parallel runway as presently proposed at Love Field situated within the City of Dallas, Texas, or from instituting and prosecuting any further litigation, lawsuits or actions in any court, the purpose of which is to contest the validity of the airport revenue bonds heretofore issued under authority of Art. 1269–J, V.A.C.S. or that might be issued under said Article for the construction of the Love Field runway and the ancillary improvement in connection therewith, or from, in any man-

ner interfering with or casting any cloud upon, or slandering the title of, or interfering with the delivery of, the proposed bonds by the City of Dallas, any of its agents or representatives or others seeking to assist them in the sale and delivery of the same."

17. The City of Dallas filed a motion to dismiss the Brown suit in the Federal Court and at a preliminary hearing in the Federal Court James P. Donovan, as attorney for the plaintiffs therein, filed a motion to dismiss certain persons as plaintiffs, but to add new party-plaintiffs. The Federal Judge granted the motion to dismiss certain plaintiffs from the suit but before permitting the new parties to intervene in that suit required assurance that the parties seeking to intervene had been warned that to actively prosecute said suit might be a contempt of this court and the orders theretofore issued by it. Attorney James P. Donovan stated to the Federal Judge that the matter had been brought to the attention of the new parties and they had been fully warned of the possible consequences of their action.

18. In spite of the Writ of Prohibition issued by this Court, attorney James P. Donovan, representing the parties in the Brown case in the Federal Court, filed an answer to the City's motion to dismiss the Brown case and actively and vigorously opposed the motion to dismiss. The basis of the attorney's opposition to such motion was that his clients had not had their day in court and that the order of this court and the order of the Supreme Court of Texas were invalid. On May 2, 1963 the Judge of the United States District Court ordered the Brown case dismissed and Respondent Donovan noted exception to such action.

19. Following the issuance of the Writ of Prohibition by this Court, attorney James P. Donovan, on behalf of himself and a number of the Respondents herein, filed Cause No. CA–3–63–120 Civil in United States District Court styled James P. Donovan, et al. v. The Supreme Court of Texas, et al., in which suit it was prayed that the

Federal Court grant an injunction against the Court of Civil Appeals and the Supreme Court of Texas restraining the enforcement of the writs theretofore issued by this court. On May 9, 1963 the Judge of the United States District Court granted motion to dismiss this cause, to which action an exception was duly noted by Donovan.

20. The present motion for contempt filed by the City of Dallas in this Court alleges that respondents, and each of them, have been guilty of contempt of this Court by violating the Writ of Prohibition and injunction heretofore issued by us in the following respects:

(a) In failing to request the Federal Court to dismiss the case of Daniel C. Brown, et al., v. City of Dallas, et al., No. 9276 pending in the United States District Court;

(b) By filing motion contesting the dismissal of said Brown suit in the Federal Court;

(c) That the respondents who made themselves new parties in the Federal Court case, following the issuance of our Writ of Prohibition and injunction, were guilty of contempt in knowingly aiding and abetting the further prosecution of said suit in the Federal Court;

(d) In appearing and vigorously and actively opposing and contesting the motion to dismiss the Brown suit in the Federal Court;

(e) By taking exceptions to the order of the Federal Court in dismissing the Brown suit;

(f) By filing cause No. CA–3–63–120 Civil styled James P. Donovan, et al., v. Supreme Court of Texas, et al., in the United States District Court which said suit seeks to interfere with the enforcement of the Writ of Prohibition issued by this Court.

The hearing on the motion for contempt came on to be heard by this Court on May

13, 1963. Motion for continuance filed by James P. Donovan, for himself and respondents, was sustained and the matter reset for May 20, 1963. On said date, May 20, 1963 the matter came on for hearing and James P. Donovan and all of the respondents who had been served with notice to appear, did appear, and announced ready for the hearing on the motion for contempt. Respondents' motion to quash the affidavit for contempt was overruled and the Court proceeded to hear testimony from both petitioners and respondents. The evidence of petitioners consisted of documentary proof relating to the matter heretofore recited and testimony of an Assistant City Attorney. The only witness who testified for respondents was attorney James P. Donovan who candidly stated that the actions and conduct on the part of all the respondents were taken upon his advice that the orders of the Supreme Court of Texas and of this Court were invalid.

The testimony presented upon this hearing abundantly demonstrates that all of the respondents are guilty of contempt of this Court. Respondents have been shown to have knowingly violated the orders of this Court which were issued in pursuance to a mandate of the Supreme Court of Texas. Such wilfull disobedience of a valid order of a court constitutes contempt which cannot be tolerated. Respondents' contention that they have not been afforded their day in court is entirely without merit. As demonstrated by the foregoing facts, respondents have had their full day in court. The issues have been presented to twenty-three judges comprising every court from the trial court to the United States Supreme Court and these judges have, without a single dissent, decided the issues against respondents. Over a period of two years respondents have had the benefit of every judicial hearing available in both State and Federal Courts. The issues having been adjudicated against them, they must necessarily recognize the end of litigation. There must be an end to litigation else there would be no purpose of beginning litigation.

If orders of this or any other court are to be ignored and disobeyed merely because some attorney says that they are invalid then our system of jurisprudence will fall and anarchy and chaos will result. We will have fallen upon evil days, indeed, when an attorney arrogates unto himself the function to declare invalid mandates of a court of law. Our Government of law, and not of men, does not tolerate such usurpation of power by any person and especially by an officer of the court sworn to protect and defend the constitution and laws of the nation and of this State.

During the hearing of this matter the respondent, attorney James P. Donovan, made many irresponsible statements concerning our courts which clearly demonstrate his attitude. For example he assailed the judgment of the Supreme Court of Texas contending that "it isn't worth, in our opinion, the paper it was written on." At another point he said, in effect, that he and his clients were not in contempt of this Court; that they were probably in contempt of the Supreme Court of Texas but they were not being tried for that.[1] He admitted that, in response to an inquiry from the United States District Judge, that he had advised his clients that they were subjecting themselves to a contempt action by proceeding in the Federal Court case. The whole record illustrates one fact clearly, that is, that the respondents, with full knowledge of the facts, followed attorney Donovan's advice and counsel to the effect that orders of the court were invalid and should be disobeyed or ignored.

Art. 1826, Vernon's Ann.Civ.St. specifically empowers this Court to punish any

---

1. It is of interest to note other irresponsible and unlawyerlike statements made by Respondent Donovan which illustrate his general attitude towards courts. For example, he charged the Assistant City Attorney with "tampering with the Court" (referring to the Federal Court), and that he did not "believe in backdoor jurisprudence" (still referring to the United States District Court).

person for a contempt of this Court, not to exceed $1,000 fine or imprisonment not to exceed twenty days. As to the individual respondents we have considered the mitigating facts and circumstances, and especially that they were advised by attorney Donovan to perform the acts complained of, and have therefore set their punishment at $200 fine. However, as to the respondent Donovan, it is our judgment that he should be assessed the maximum jail sentence of twenty days in the County Jail.

Subsequent to the entry of our original judgment several of the respondents appeared and presented additional mitigating or extenuating circumstances, and as a result thereof we have amended our order, as shown by the record herein, completely exonerating twenty-six of the respondents and altering and modifying the sentence of others.

All respondents, with exceptions heretofore noted, are found guilty of contempt and assessed punishment as shown by the judgment of this Court.